Eastern District of Kentucky
FILED
AUG 1 - 2005
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

CIVIL ACTION NO. 2004-256

CHARLES E. MEECE, JR.                                    PLAINTIFF

VS.                     **OPINION AND ORDER**

JO ANNE BARNHART
COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT

This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 11) and the cross-motion for summary judgment of the defendant (Doc. 12).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 00-5710, 2001 WL 966284 (6th Cir. 2001)(unreported)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. Aug. 16, 2001)).

In order to qualify for disability benefits, a claimant must establish that he is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines

1

"disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)( citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate he suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then plaintiff is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. Id. Lastly, even if the claimant cannot perform his past

relevant work, he is not disabled if he can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, claimant was forty-three years old and is a high school graduate. Claimant has prior relevant work as a construction laborer and a truck driver.

In March 1996, the claimant injured his neck as he was unloading a heavy door from the back of a truck. Claimant was diagnosed as having an acute cervicalسprain with spasm. After physical therapy failed to relieve his symptoms, claimant underwent an anterior cervical diskectomy and fusion at C5-6 with bone grafting. After surgery, claimant continued to complain of severe neck pain and headaches.

Claimant first applied for benefits in January 1999. On July 27, 2000, an ALJ issued a partially favorable decision awarding claimant a closed period of disability from March 12, 1996 to February 16, 2000. The claimant did not appeal that decision. Claimant states that his neck pain and headaches have gotten worse since February 2000 and, therefore, he filed this second application for benefits.

At the hearing on this application, the ALJ sought testimony from the claimant and a vocational expert. Upon

3

hearing the testimony and reviewing the record, the ALJ performed the requisite 5 step evaluation for determining disability.

At step one, the ALJ determined that claimant had not been engaged in substantial gainful activity since the alleged onset of disability. At step 2, the ALJ determined that the claimant has "degenerative disc disease and spondylosis in the cervical spine and he is status post an anterior cervical diskectomy and fusion at C5-6 with residual pain and headaches" that are "severe" impairments. At step 3, the ALJ determined that, although claimant has impairments that are "severe," he does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1. At step 4, the ALJ found the claimant is unable to perform his past relevant work. At step 5, the ALJ found that the claimant "has a residual functional capacity to lift five pounds frequently and ten pounds occasionally, push/pull is limited to 30 pounds; he has no limitation of standing, walking, or sitting; he cannot maintain cervical flexion or extension for prolonged periods and must be able to change neck position as needed; he should not be required to perform regular frequent turns of the head and neck." The vocational expert opined that given claimant's age, education, work history and the limitations assigned by the ALJ, that a significant number of jobs existed in the national economy that the claimant could perform. Based on this testimony, the ALJ found the claimant not disabled.

The claimant argues that the ALJ erred in not giving

4

appropriate weight to the medical opinion of his treating physician. The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well - supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2). If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. Bogle v. Sullivan, 998 F.2d 342, 347-49 (6th Cir. 1993).

The claimant asserts that the ALJ did not give sufficient weight to Dr. Wunder's assessments. The ALJ, however, gave numerous reasons to support his finding that Dr. Wunder's assessments were not entitled to great weight. The ALJ stated:

> Counsel pointed out that Dr. Wunder completed disability forms for an insurance carrier on August 24, 2001 and September 27, 2002, in which he checked boxes indicating that the claimant was incapable of even minimal activity or sedentary work (Exhibits B2F/1,2). Those conclusory statements carry no weight whatsoever as Dr. Wunder provided no explanation on the forms for this limitation. With his letter of October 21, 2003, counsel submitted copies of Dr. Wunder's notes from office visits on the aforementioned dates. The notes are cursory and Dr. Wunder fails to set forth any specific clinical findings. For example, in August 2001 he says that he claimant has "chronic right C7 findings" (Exhibit B8F/3); however, he does not explain what these are. In September 2002, he says the claimant has chronic cervical radiculopathy, but then states there has been neurological improvement over time - again without any further explanation (Exhibit B&F/4). He never documents specific degrees of decreased range of motion, loss of sensation and muscle strength, or any other clinical signs consistent with a deteriorating condition. According to Dr. Hiestand's orthopedic consultative examination in May 2002 [which is considerably more detailed than either of Dr. Wunder's office notes], there was decreased cervical range of motion, but no other evidence of motor or sensory deficit (Exhibit B3F/4).

5

The ALJ further found:

In another letter, dated December 9, 2003, counsel states that Dr. Wunder has now addressed the issue of workdays lost due to headaches. In the accompanying letter of December 4, 2003, Dr. Wunder says, vaguely, that the claimant is likely to miss "many" or "quite a number of" days at work each month due to his headaches (Exhibit B10F/3). He again opines that the claimant could not maintain even sedentary work on a regular basis. These statements are not especially helpful and are completely unsupported by his treatment notes. Consequently, they receive no substantial weight. In fact, Dr. Wunder scarcely qualifies as a treating physician since [the previous SSA decision] because he only sees the claimant once a year. On August 24, 2001, he suggests that tightness in the cervical musculature and cervical spondylosis are possible causes for the claimant's headaches, but says nothing about their frequency or severity (Exhibit B8F/3). The claimant was supposed to have seen Dr. Wunder in October 2003, but the office note from that visit was not submitted.

In his letter of December 4, 2003, Dr. Wunder states that the claimant told him certain positions do seem to ease his neck pain during the course of the day. Dr. Wunder agreed that some positions would likely relieve pressure off the facet joints in the neck, similar to cervical traction (Exhibit B10F/3). Obviously, ability to change neck/head positioning to avoid prolonged cervical flexion or extension would be beneficial, but this does not establish the medical necessity for lying down frequently during the day.

The court finds that the ALJ articulated clear reason why he discredited treating physician Dr. Wunder's assessment: he did not find the treating physician's sparse assessments to be supported by the record. The court finds that the ALJ stated acceptable reasons for finding Dr. Wunder's assessment less than fully credible.

Claimant also argues the ALJ erred in replacing Dr. Wunder's assessment with his own. Specifically, the claimant objects to the ALJ's observations that claimant does not take any of the recognized medications that are generally prescribed for headache

6

relief, he does not need to go into a darkened room for relief and rarely becomes nauseous from his headaches. Claimant argues that in making these observations, the ALJ has confused migraine headaches with the "cervicogenic" headaches diagnosed by Dr. Wunder. Thus, claimant argues that the ALJ's RFC determination is not based upon the record, by his own medical opinion.

The court finds that the ALJ's discussion of claimant's use of over-the-counter medications, his lack of nausea, and the fact his headaches are not light sensitive was not used in the ALJ's RFC determination, but in determining claimant's credibility. The law is clear that the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. Kirk v. Secretary of H.H.S., 667 F.2d 524, 538 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). Here, in finding the claimant's testimony was not full credible the ALJ stated:

> The claimant's allegations regarding his symptoms and functional limitations are only partially credible. It is unquestioned that his neck impairment would lead to headaches, but not to the extent alleged. He sees Dr. Wunder only once a year and his primary care physician only once or twice a year. He alleges that he has no health insurance and cannot afford to go more often. Nevertheless, if the claimant were in as much pain as alleged, it is reasonable to conclude that he would be more diligent in seeking relief, at least to the point of making regular phone calls to request stronger or at least different medications. There is absolutely no proof that the claimant has complained to any of his doctors that the current medication regimen is ineffective or that he is in need of immediate relief. There is also no documentation of emergency room visits for severe neck pain or chronic

7

headaches. The claimant is not financially destitute. He receives $1,200 per month in private disability insurance and his wife works. Thus, poverty would not explain such infrequent visits to a physician.

The claimant's current medications are also inconsistent with disabling pain, especially his use of over the counter medicine. Although he alleges disabling headaches, he does not take any of the recognized medications that are generally prescribed for headache relief, such a Fiorinal, Imitrex, Zomig, etc. Also inconsistent with disabling headaches is the fact that the claimant does not need to go into a darkened room for relief and rarely becomes nauseous. Daily activities indicate he is able to help out at home to a degree inconsistent with his allegations. He gets up to help his children get ready for school, helps make their lunch, vacuums once a week, sweeps once a week, drives once or twice a week, and grocery shops with his wife. He even went hunting in November 2002.

In determining whether to credit claimant's testimony, the ALJ considered several factors. The facts disputed by claimant are only a limited part of that credibility analysis. The court finds the ALJ's credibility analysis was not improper and that the ALJ's determination that claimant's testimony was not totally credible is entitled to deference. For the foregoing reasons, the court holds that the findings of the ALJ are supported by substantial evidence. Accordingly, the claimant is not disabled within the meaning of the Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 11) be, and it hereby is, **denied** and the cross motion for summary judgment of the defendant (Doc. 12) be, and it hereby is, **granted.** That this matter be, and it is, hereby dismissed and stricken from the docket of this court.

8

This 1st day of August, 2005.

*William O. Bertelsman*
**WILLIAM O. BERTELSMAN, JUDGE**